UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.:

SEAN HORNE, CLYDE MONTGOMERY and
EUGENE WILLIAMS,

    Plaintiffs,

vs.

MIAMI-DADE COUNTY SCHOOL BOARD;
ALBERTO M. CARVALHO, in his official
capacity as Superintendent of Schools
Miami-Dade County Public Schools.

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, SEAN HORNE, CLYDE MONTGOMERY and EUGENE WILLIAMS (hereinafter referred to as Horne, Montgomery and Williams collectively), by and through their undersigned counsel files this, its Complaint against Defendants MIAMI-DADE COUNTY SCHOOL BOARD (hereinafter "SCHOOL BOARD") and ALBERTO M. CARVALHO, in his official capacity as Superintendent of Schools Miami-Dade County Public Schools, and state as follows:

### *INTRODUCTION*

1    Plaintiffs were employed by the Defendants and have suffered discriminatory treatment and retaliation by their former employer on the basis of their race. Thus, this is an action for violations of the Fourteenth Amendment of the United States Constitution brought by the Plaintiffs for damages under Title 42 U.S.C. §1983,

## *JURISDICTION*

2. The jurisdiction of the Court over this controversy is based on Title 42 U.S.C. §1983, to redress by damages, injunctive and other relief, the deprivation, under color of state law, of rights and privileges secured to the Plaintiff by the Constitution of the United States of America; subject matter jurisdiction over the matters at issue pursuant to 28 U.S.C.A. §1343(a)(3) and

## *VENUE*

3. The constitutional violations alleged below occurred and/or were committed within the State of Florida, Miami-Dade County. Accordingly, venue lies in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1391(b).

## *PARTIES*

4. At all times material hereto, Plaintiffs, HORNE, MONTGOMERY and WILLIAMS, were and continue to be Florida residents and continue to reside in Miami-Dade County, Florida.

5. At all times material hereto, Plaintiffs, HORNE, MONTGOMERY and WILLIAMS, were employed by the Defendants.

6. At all times material hereto, Defendants were and continue to be a "Person" within the meaning of 42 U.S.C. §1983.

7. At all times material hereto, the Defendants' actions as set forth herein occurred under the color of State law within the meaning of 42 U.S.C. §1983.

## STATEMENT OF FACTS

8. Plaintiffs were employed as Police Officers with the SCHOOL BOARD.

9. Plaintiffs were qualified for their positions as Police Officers.

10. Plaintiffs worked in their respective positions as Police Officers prior to applying for the position of Police Sergeant.

11. Plaintiffs met the qualifications to apply for promotion to the position of Police Sergeant.

12. Plaintiffs were notified that their respective applications for the two part examination for promotion to the position of Police Sergeant were accepted.

13. PART I of the Promotional Examination consisted of a written examination with the purpose of evaluating technical job knowledge, weighted at fifty-three percent (53%).

14. PART II of the Promotional Examination consisted of an assessment component entitled the B.A.D.G.E. exercise (Behavioral Assessment Dimension Guided Evaluation) with the purpose of evaluating the following performance dimensions: adaptability, leadership, organizing and planning, decision making, perception, interpersonal, and oral communication, weighted at forty-seven percent (47%).

15. The Career Employment Opportunity Bulletin for the Promotional Police Sergeant Examination indicates that all individuals completing PART I of the promotional examination will be notified in writing, by the Miami Dade Schools Police

Department as to whether he/she is qualified to proceed to PART II of the promotional examination.

16. Plaintiffs successfully completed both parts of the Promotional Police Sergeant Examination.

17. The Career Employment Opportunity Bulletin for the Promotional Police Sergeant Examination section entitled Scoring and Notification of Results indicates that a Promotional Eligibility List will be prepared upon completion of both parts of the promotional examination. Candidates with standardized composite scores that are at or above one standard deviation below the mean will be placed on a rank ordered list based on their overall score. Candidates will receive written notification of their final score at the conclusion of the process.

18. Plaintiffs, having successfully completed both parts of the Promotional Police Sergeant Examination, have repeatedly requested to receive and review their final scores and their respective examination results in accordance with the Career Employment Opportunity Bulletin for the Promotional Police Sergeant Examination section entitled Scoring and Notification of Results all applicable federal and state laws.

19. Defendant's authorized agents, and/or subcontractors have failed to provide the Plaintiffs with their respective examination results in compliance with the Career Employment Opportunity Bulletin for the Promotional Police Sergeant Examination section entitled Scoring and Notification of Results and all applicable federal and state laws.

20. Defendant prepared a Promotional Eligibility List upon the completion of the two part Police Sergeant Examination for all candidates which has an adverse impact on African Americans ranked on the Promotional Eligibility List.

21. Adverse Impact as defined by the Uniform Guidelines on Employee Selection Procedures is a statistical concept that is generally used to mean there is a "substantially different passing rate" between two groups on a practice, procedure, or test. The 1991 Civil Rights Act requires that a "particular employment practice" need to be identified as the source of adverse impact for a complainant to establish a disparate impact case, unless the results are not capable for separation for analysis. This type of analysis can be regarded as the "most typical" type of adverse impact analysis, and is specifically explained in the Uniform Guidelines as a "rates comparison" that compares the passing rates between two groups (African-Americans and Non African-Americans) on a practice, procedure or test.

22. Adverse impact and the "four-fifths rule." A selection rate for any race, sex, or ethnic group which is less than four-fifths (4/5) (or eighty percent) of the rate for the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of adverse impact, while a greater than four-fifths rate will generally not be regarded by Federal enforcement agencies as evidence of adverse impact. Smaller differences in selection rate may nevertheless constitute adverse impact, where they are significant in both statistical and practical terms or where a user's actions have discouraged applicants disproportionately on grounds of race, sex, or ethnic group.

Greater differences in selection rate may not constitute adverse impact where the differences are based on small numbers and are not statistically significant, or where special recruiting or other programs cause the pool of minority or female candidates to be atypical of the normal pool of applicants from that group. Where the user's evidence concerning the impact of a selection procedure indicates adverse impact but is based upon numbers which are too small to be reliable, evidence concerning the impact of the procedure over a longer period of time and/or evidence concerning the impact which the selection procedure had when used in the same manner in similar circumstances elsewhere may be considered in determining adverse impact. Where the user has not maintained data on adverse impact as required by the documentation section of applicable guidelines, the Federal enforcement agencies may draw an inference of adverse impact of the selection process from the failure of the user to maintain such data, if the user has an underutilization of a group in the job category, as compared to the group's representation in the relevant labor market or, in the case of jobs filled from within, the applicable work force. See 41 CFR 60-3 4(d) Uniform Guidelines on Employee Selection Procedures (1978).

23. Defendant conducted its own Adverse Impact Analysis relevant to the instant matter for 2002 and 2004. The results of the Defendants' analysis showed that there was an adverse impact on African-Americans as a minority subgroup.

24. The Defendant have tested and promoted a minimum of three (3) times for the position of Police Sergeant since 2002 in conjunction with the Miami Dade College School of Justice (SOJ) to conduct their promotional assessments

25. Since 2002 and the implementation of the contract with SOJ to conduct promotional assessments for the Defendant, only two (2) black officers have been promoted

26. The Defendants and the contracted party, SOJ have intentionally withheld information upon repeated lawful requests from Plaintiffs and the EEOC as it relates to promotional testing results and pursuant to access under the state and federal law.

27. An Agent of the Defendant was determined to have/had a "business relationship" with SOJ as a vendor

28. The Agent of the Defendant whose business relationship was confirmed by the Defendant as a Vendor, was one of the signors on the contract between the Defendant and SOJ.

29. The Agent of the Defendant whose business relationship was confirmed by the Defendant as a Vendor was in the approval chain on the purchase order for the transaction establishing the "assessment testing" contract between the Defendant and SOJ.

30. As recently as 2009, SOJ, a subcontractor and/or agent of the Defendants has a confirmed history of "errors and/or mistakes" related to examinations of police officers testing for promotion to the position of police sergeant.

31. Errors and/or mistakes of SOJ resulted in a promotional eligibility list for a local law enforcement agency similar to the process used in the instant case.

32. The Defendant have a history of not promoting black officers to supervisory positions within its police department.

33. The Defendant have continued practice of promoting white and Hispanic police officers to the rank of police sergeant

34. The Defendant have failed to state a non-discriminatory reason for promoting blacks to supervisory positions within its police department.

35. All three plaintiffs filed charges of discrimination with the EEOC and have participated in proceedings related to the charges of discrimination.

36. SCHOOL BOARD is and was, at all times material, a political subdivision of the State of Florida engaged in an industry affecting commerce who had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. It is and was an "employer" under 42 U.S.C. § 2000e(b) and the FCRA

37. During the Plaintiffs' employment with the Defendants, at one point there were one sixty two (162) police officers, there were only six (6) black supervisors.

38. On October 4, 2007 Plaintiff Horne filed a complaint with the Defendants based on Color and Ethnic/National Origin against the SCHOOL BOARD

39. On January 8, 2008, Plaintiff Horne had a four percent (4%) salary supplement removed by the Defendants which he had received for almost a year before filing a complaint with the Defendant

## COUNT I: VIOLATION OF EQUAL PROTECTION CLUASE

## UNDER 42 U.S.C. §1983

40. Plaintiffs incorporate by reference paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41  The Defendants' actions as set forth herein violate Plaintiffs, HORNE, MONTGOMERY and WILLIAMS, federally protected right to equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

42  All of the aforementioned acts and omissions of the Defendants complained of by Plaintiffs have been performed or committed by the Defendants and its agents and employees while acting under the color of State law

43.  The two part Police Sergeant Examination used by the Defendants have adversely impacted the Plaintiffs and other similarly situated African Americans

44.  As a direct and proximate result of the Defendants unlawful and willful actions as set forth above, Plaintiffs have suffered damages and will continue to suffer damages in the future including, but not limited to:

    a.  Compensatory damages;

    b.  Lost profits; and

    c.  Other financial losses

45.  Plaintiffs are entitled to an award of reasonable attorney's fees, costs and expenses related to this litigation pursuant to 42 U.S.C. §1988

46  WHEREFORE, Plaintiffs respectfully requests that judgment be entered in their favor against Defendants and

47.  Declaring that the Defendants violated Plaintiffs', HORNE, MONTGOMERY and WILLIAMS, equal protection rights under the Fourteenth Amendment to the United States Constitution;

48. Permanently enjoining the Defendants from pursuing and continuing to pursue their illegal, unlawful and unconstitutional discrimination against Plaintiffs, HORNE, MONTGOMERY and WILLIAMS;

49. Awarding Plaintiffs actual and consequential damages, plus interest;

50. Awarding Plaintiffs punitive damages against Defendants;

51. Awarding reasonable attorney's fees, costs and expenses related to this litigation pursuant to 42 U.S.C. §1988; and

52. Ordering any other and further relief as this Court may deem just and proper.

## COUNT II. RETALIATION

53. Plaintiff SEAN HORNE realleges and adopts, as if fully set forth in this count, all of the allegations in Paragraphs 1 - 39.

54. The adverse employment actions which Plaintiff HORNE suffered grew out of and/or were the result of his internal complaints to Defendants about discrimination and retaliation, and participation in defendants' investigations of his complaints.

55. As a direct and proximate result of the Defendants unlawful and willful actions as set forth above, Plaintiff, HORNE, has suffered damages and will continue to suffer damages in the future including, but not limited to:

    a) Compensatory damages;

    b) Lost profits; and

    c) Other financial losses

56. Plaintiff is entitled to an award of reasonable attorney's fees, costs and expenses related to this litigation pursuant to 42 U.S.C. §1988.

57   WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor against Defendants and

58   Declaring that the Defendants retaliated against Plaintiff's, HORNE, by removing his 4% salary supplement after complaining about discrimination to the Defendant;

59   Permanently enjoining the Defendants from pursuing and continuing to pursue their illegal, unlawful retaliatory actions against Plaintiff, HORNE;

60   Awarding Plaintiff actual and consequential damages, plus interest;

61   Awarding Plaintiff punitive damages against Defendants;

62   Awarding reasonable attorney's fees, costs and expenses related to this litigation pursuant to 42 U.S.C. §1988; and

63   Ordering any other and further relief as this Court may deem just and proper.

## JURY DEMAND

64   Plaintiff demands trial by jury on issues so triable as of right by jury.

Dated this 1 day of February, 2010

Respectfully submitted,

**REMER & GEORGES-PIERRE, PLLC**
11900 Biscayne Boulevard
Suite 288
Miami, Florida 33181
Tel  (305) 416-5000
Fax: (305) 416-5005

By: _____
Anthony M. Georges-Pierre, Esq.
Florida Bar Number: 0533637